UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHIE HICKS,

       Plaintiff,                     CIVIL ACTION NO. 07-15485

       v.                              DISTRICT JUDGE DAVID M. LAWSON

HARRINGTON, BLAINE LAFLER,      MAGISTRATE JUDGE VIRGINIA M. MORGAN
K. WASHINGTON, A. GONZALES,
CRAWFORD, KELLOGG, JILL M.
SMITH, ANN Y. BURTON, and
HUSS,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

       This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that defendants harassed him, retaliated against him, and denied him adequate medical care. The matter comes before the court on defendants Lafler, Washington, Gonzales, Crawford, Kellogg, Smith and Huss' Motion for Summary Judgment (D/E #18) and defendant Burton's Motion to Dismiss (D/E #19). For the reasons discussed below, this Court recommends that defendants' motions be **GRANTED** and

that all of plaintiff's claims be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a) because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.[1]

## II. Background

### A. Complaint

On December 27, 2007, plaintiff filed the complaint against defendants in this matter (D/E #1). In that complaint, plaintiff provides that he is, and has been for all times relevant to this action, incarcerated in the St. Louis Correctional Facility (SLF) in St. Louis, Michigan. Defendants work at SLF in various capacities: Harrington is a Correctional Officer, Lafler is the Warden, Washington is an Assistant Deputy Warden, Gonzales is an Assistant Resident Unit Supervisor, Crawford is a Correctional Officer, Kellogg is a Correctional Officer, Smith is a Nurse, Burton is a Doctor, and Huss is a Correctional Officer.

According to the complaint, on May 25, 2007, at dinner time, Huss sent plaintiff back to plaintiff's unit because plaintiff was wearing a t-shirt. Plaintiff asked Huss if plaintiff could eat first, but Huss refused. Plaintiff also alleges that, on June 8, 2007, Harrington began harassing plaintiff for some unknown reason. Harrington allegedly prevented plaintiff from going outside, despite the fact that plaintiff "needed to go outside at least once a day to relieve stress." Plaintiff asked Harrington to identify himself. Harrington identified himself, but he also threatened to

---

[1] As discussed below, while defendant Harrington did not bring a motion to dismiss or for summary judgment, the claims against him should also be dismissed pursuant to 42 U.S.C. § 1997e(a) because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Moreover, this Court would note that, while the title of the motion in D/E #18 does not identify Harrington as among the parties bringing the motion for summary judgment, he is identified as one of those parties in the brief and the arguments in that brief regarding exhaustion equally apply to him.

attack plaintiff. Plaintiff states that he subsequently sent complaints regarding Harrington to Lafler, Washington, the Michigan State Police, the United States Marshals, and the director of the MDOC, but no one took any action.

The complaint further alleges that, on June 14, 2007, Kellogg, at the direction of Harrington, wrote plaintiff a misconduct ticket and prevented air from entering plaintiff's cell. Plaintiff began having trouble breathing and chest pains. He was sent to the Health Care Unit, but, after he arrived, Smith only gave him water.

Plaintiff then states that, on June 20, 2007, Crawford, at the direction of Harrington, entered plaintiff's cell and threw plaintiff's property all over. Plaintiff reported Crawford's actions to Gonzales, but she told plaintiff she thought he was lying.

Plaintiff claims that, on June 23, 2007, plaintiff rushed over to the Health Care Unit because he was experiencing chest pains, shortness of breath, and numbness in his limbs. At the Health Care Unit, plaintiff was seen by Smith. At first, she only yelled at him and said she did not know what was wrong with him. Plaintiff's symptoms began to worsen and he started to fall out of his chair. Smith hit plaintiff in his arm and yelled at him to sit up. Smith also tried to force plaintiff to drink some water, despite the fact that plaintiff was having trouble breathing and could not swallow. After plaintiff began choking, Smith stopped trying to force him to drink water.

Plaintiff states that Smith then sent plaintiff to the hospital. At the hospital, plaintiff underwent an EMG and a chest x-ray. However, because the correctional officers refused to unchain plaintiff, the doctor was unable to x-ray plaintiff's lungs. Plaintiff was still in pain when

he was sent back to SLF, but he was prescribed Motrin and he was told to place a hot rag over his chest. Back at SLF, Smith denied plaintiff the prescribed Motrin. Plaintiff wrote to Lafler and Washington regarding his medical treatment and his suffering, but they did not remedy the problem.

The complaint further alleges that, on June 24, 2007, Smith told plaintiff that his symptoms may be the result of stress and she wanted to send plaintiff to a psychiatrist. Plaintiff subsequently saw a psychiatrist and the psychiatrist advised plaintiff that his symptoms could be the result of stress caused by defendants' actions.

Plaintiff claims that, on June 25, 2007, plaintiff was seen by Dr. Burton in the Health Care Unit. Dr. Burton, however, only laughed at plaintiff and she refused to provide plaintiff with the Motrin prescribed by the doctor who treated plaintiff at the hospital. Plaintiff also states that, on July 1, 2007, Harrington threatened to kill plaintiff if plaintiff submitted any more complaints.

### B. Motions Before the Court

On March 6, 2008, defendants Lafler, Washington, Gonzales, Crawford, Kellogg, Smith, and Huss filed a motion for summary judgment (D/E #18). In that motion, defendants argue that they are entitled to summary judgment because plaintiff failed to properly exhaust his administrative remedies prior to filing his lawsuit against them. On April 15, 1008, plaintiff filed a response to the motion for summary judgment (D/E #31). In that response, plaintiff argues that he fulfilled the exhaustion requirement by providing the MDOC with notice of his complaints.

Also on March 6, 2008, defendant Burton filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (D/E #19). In that motion, Burton argues that plaintiff's claim against Burton should be dismissed because plaintiff failed to properly exhaust his administrative remedies prior to filing his lawsuit and because plaintiff failed to state a claim upon which relief can be granted. On April 15, 2008, plaintiff filed a response to the motion to dismiss (D/E #32). In that response, plaintiff argues that he fulfilled the exhaustion requirement by providing the MDOC with notice of his complaints and that he stated a claim of deliberate indifference to plaintiff's serious medical needs against Burton. On April 17, 2008, Burton filed a reply to plaintiff's response (D/E #33) in which she asserted that plaintiff's allegations against her do not rise to the level of deliberate indifference.

### III. Standards of Review

#### A. Summary Judgment

Defendants Lafler, Washington, Gonzales, Crawford, Kellogg, Smith and Huss move for summary judgment pursuant to Fed. R. Civ. Pro. 56(b). That rule states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

### B. Dismissal

Dr. Burton moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) permits a district court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering whether to grant a defendant's motion to dismiss pursuant to Rule 12(b)(6) a district court must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff. Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006). A district court need not, however, accept

as true legal conclusions or unwarranted factual inferences. Kottmyer, 436 F.3d at 688. A claim survives a motion under Fed. R. Civ. P. 12(b)(6) "where its '[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.'" Zaluski v. United American Healthcare Corp., 527 F.3d 564, 570 (6th Cir. 2008), quoting Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007). "In reviewing a Rule 12(b)(6) motion to dismiss, [we treat] all well-pleaded allegations in the complaint as true, and [we] find dismissal proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." Zaluski, 527 F.3d at 570 quoting Downie v. City of Middleburg Heights, 301 F.3d 688, 693 (6th Cir. 2002) (internal citations omitted). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Twombley, 127 S.Ct. at 1970.[2]

**IV. Discussion**

---

[2]Recently, the Sixth Circuit has noted that there remains some confusion as to when a court should require particular facts to be pled, as required by Twombly, and when a court should apply a more liberal pleading standard. U.S. v. Ford Motor Co., 532 F.3d 496, 503 n. 6 (6th Cir. 2008). As the Sixth Circuit noted, while Twombly held that a plaintiff must plead particular facts in their complaint. 127 S.Ct. at 1965, the Supreme Court held in Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), a case decided just two weeks after Twombly, that a prisoner bringing a § 1983 claim against his captor is not required to state "[s]pecific facts" in their complaint; Erickson, 127 S.Ct. at 2200, and Twombly itself suggests that its holding may be limited to cases likely to produce "sprawling, costly, and hugely time-consuming" litigation. 127 S.Ct. at 1973 n. 6; see also Ford Motor Co., 532 F.3d at 503 n. 6 (6th Cir. 2008).

**A. Exhaustion of Administrative Remedies**

All of the defendants argue that plaintiff's claims are barred because he failed to properly exhaust all of his administrative remedies prior to bringing this action. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

The administrative procedure applicable to the plaintiff's claims are set forth in MDOC Policy Directive 03.02.130 "Prisoner/Parolee Grievances" (Effective 03/05/07).[3] Under that policy, an inmate may submit grievances "regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant." (PD 03.02.130, ¶ E) Per the general grievance process, within five business days after attempting to resolve a

---

[3]That policy directive is attached as Exhibit A to D/E #18 and as Exhibit D to D/E #19.

grievable issue with prison staff, a prisoner may send a completed grievance form to the Step I Grievance Coordinator. (PD 03.02.130, ¶ V) The Grievance Coordinator shall then determine within fifteen business days if the grievance should be accepted or rejected. (PD 03.02.130, ¶ X) If the prisoner is dissatisfied with the Step I response or if he did not receive a timely response, he may file a Step II grievance within ten business days of receiving the Step I response or, if no response was received, within ten business days of when the response was due. (PD 03.02.130, ¶ BB) Respondents at Step II include the Warden and the officials responsible for the department the subject matter of the grievance involves. (PD 03.02.130, ¶ DD) A determination on that Step II grievance should be made within fifteen business days after it is received. (PD 03.02.130, ¶ CC) If the prisoner is dissatisfied with the Step II response or if he did not receive a timely response, he may file a Step III grievance within ten business days of receiving the Step II response or, if no response was received, within ten business days of when the response was due. (PD 03.02.130, ¶ FF) Each grievance received at Step III is logged on a computerized grievance tracking system and it should be responded to by the Grievance Appeals Section. (PD 03.02.130, ¶ GG) The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days. (PD 03.02.130, ¶ S)

In this case, a grievance inquiry provided by defendants[4] shows that plaintiff only completed the MDOC grievance process through Step III with respect to one grievance:

---

[4] The Grievance Inquiry Sheet for plaintiff is attached as Exhibit B to D/E #18 and as part of Exhibit A to D/E #19.

Grievance No. NCF5-2005-12-927-17z.[5] Plaintiff filed the grievance against "ADW Tribley" and in it he alleged that Tribley failed to treat plaintiff humanely and with dignity in matters related to health care as required by MDOC policy. As argued by defendants, Grievance No. NCF-2005-12-927-17z does not involve allegations related to any of the defendants or claims asserted in this action, and it cannot operate to exhaust the plaintiff's administrative remedies as to defendants and claims in this action.

Defendants Lafler, Washington, Gonzales, Crawford, Kellogg, Smith and Huss also provide grievances filed by plaintiff that appear to be related to some of the claims he asserts in this action, but which plaintiff did not appeal to Step III. In Grievance No. SLF-07-05-0898-28b,[6] plaintiff claimed that Huss discriminated against him and denied him the right to eat before leaving the chow hall. That grievance was rejected at Step I on the basis that the grievance was vague and there is no indication the plaintiff appealed that rejection. In Grievance No. SLF-07-05-0899-28b,[7] plaintiff alluded to a "meeting" and he claimed that the second shift staff was unprofessional, neglectful and corrupt. That grievance was rejected at Step I because of plaintiff's failure to set forth the issue being grieved and there is no indication that plaintiff appealed that rejection. In Grievance No. SLF-07-06-0934-04f,[8] plaintiff alleged that Kellogg

---

[5]Grievance No. NCF5-2005-12-927-17z is attached as Exhibit C to D/E #18 and as part of Exhibit A to D/E #19.

[6]Grievance No. SLF-07-05-0898-28b is attached as Exhibit D to D/E #18.

[7]Grievance No. SLF-07-05-0899-28b is attached as Exhibit E to D/E #18.

[8]Grievance No. SLF-07-06-0934-04f is attached as Exhibit F to D/E #18.

-10-

had closed the bottom door slot on plaintiff's cell door. That grievance was rejected at Step I after it was determined that Kellogg was properly responding to plaintiff's abuse of the bottom door slot and that there was no reason to believe that the ventilation in plaintiff's cell was not working. There is no indication that plaintiff appealed that rejection. In Grievance No. SLF-07-07-1001-27a,[9] plaintiff alleged that Crawford has wrongfully written plaintiff a misconduct ticket. That grievance was rejected at Step I because plaintiff was trying to grieve a non-grievable issue. Plaintiff appealed to Step II, where his grievance was again rejected. There is no indication that plaintiff appealed to Step II.

While the above grievances appear to relate to some of plaintiff's claims, plaintiff did not properly exhaust his administrative remedies in this case. Plaintiff argues that the filing of such grievances gave the MDOC notice of plaintiff's complaints, as well as a chance to correct them, but the United States Supreme Court expressly held in Woodford that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 126 S.Ct. at 2386. In this case, plaintiff failed to comply with the applicable grievance procedures because he failed to appeal his grievance to Step III and thereby take advantage of the procedures put in place by the MDOC. Moreover, with respect to several of plaintiff's grievances, his complaints were rejected on procedural grounds at Step I and, consequently, the merits of the grievance were never ruled on by the MDOC because of plaintiff's failure to comply with the applicable procedures. The Sixth Circuit has identified

---

[9]Grievance No. SLF-07-07-1001-27a is attached as Exhibit G to D/E #18.

the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones, 127 S.Ct. at 923. In this case, plaintiff has failed to properly exhaust his administrative remedies with respect to his claims against defendants and the benefits of the exhaustion requirement have not be met. Therefore, his complaint should be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).[10]

### B. Failure to State a Claim

As discussed above, this Court recommends that the claim against Dr. Burton be dismissed because plaintiff failed to exhaust his administrative remedies. However, in addition to arguing that plaintiff failed to exhaust his administrative remedies, Dr. Burton also argues that plaintiff failed to state a claim upon which relief can be granted against her. As discussed above, plaintiff alleges that plaintiff was seen by Dr. Burton in the Health Care unit on June 25, 2007, but Burton only laughed at plaintiff and she refused to provide plaintiff with the Motrin prescribed by the doctor who treated plaintiff at the hospital. According to plaintiff, such allegations constitute a claim that Burton violated plaintiff's constitutional right to medical treatment.

---

[10]As noted above, defendant Harrington did not bring a motion arguing that plaintiff's claim should be dismissed pursuant to 42 U.S.C. § 1997e(a). However, the other defendants have provided this Court with the one grievance plaintiff did fully exhaust and that grievance does not involve Harrington. Moreover, while the title of the motion in D/E #18 does not identify Harrington as among the parties bringing the motion for summary judgment, he is identified as one of those parties in the brief and the arguments in that brief apply to him.

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. See <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. <u>Wilson</u>, 501 U.S. at 300.

The objective component is satisfied by a showing that plaintiff had a serious medical need. <u>Wilson</u>, 501 U.S. at 297. As clarified by the Sixth Circuit, a reviewing court should first determine whether the injury is "obvious," i.e. "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Blackmore v. Kalamazoo County</u>, 390 F.3d 890, 897 (6th Cir. 2004), quoting <u>Gaudreault v. Municipality of Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990). "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test." <u>Johnson v. Karnes</u>, 398 F.3d 868, 874 (6th Cir. 2005), quoting <u>Blackmore v. Kalamazoo County</u>, 390 F.3d 890, 899 (6th Cir. 2004). Therefore, if there is an obvious need for medical treatment, then the court must only determine whether the delay in securing that care was reasonable. <u>Blackmore</u>, 390 F.3d at 899-900. If, however, the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical

treatment.'" Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).

To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992). Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition. Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted). However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835. Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

In this case, Dr. Burton argues that plaintiff merely alleges a dispute over the adequacy of the treatment and that her alleged actions, laughing and denying a pain killer, are not enough to show a sufficiently culpable state of mind. The Sixth Circuit has held that a *pro se* litigant's submissions are to be construed liberally, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) and are to be held to a "less stringent standard[]" than those drafted by attorneys. Haines v. Kerner,

404 U.S. 519, 520 (1972). In this case, viewing plaintiff's complaint liberally, he has stated a claim upon which relief can be granted against Dr. Burton. While Dr. Burton argues that plaintiff merely alleges a dispute over the adequacy of the treatment, the complaint does not state that Dr. Burton treated plaintiff at all and, instead, appears to allege that Dr. Burton completely refused to treat plaintiff. Moreover, while Dr. Burton argues that laughing and denying a pain killer are not enough to show a sufficiently culpable state of mind, the medication was prescribed and the complaint appears to allege that Dr. Burton laughed and denied the prescribed medication without examining plaintiff. Dr. Burton attempts to portray plaintiff claim as relating to the denial of a specific pain reliever when it actually involves the denial of all pain relievers and any treatment. Neither party has submitted medical records supporting their positions. Therefore, viewing plaintiff's complaint liberally, dismissal would be inappropriate at this time upon this ground.

## V. Conclusion

For the reasons discussed above, the court recommends that defendants' motions be **GRANTED** and that all of plaintiff's claims be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a) because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

        s/Virginia M. Morgan
        Virginia M. Morgan
        United States Magistrate Judge

Dated: October 7, 2008

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on October 7, 2008.

        s/Jane Johnson
        Case Manager to
        Magistrate Judge Virginia M. Morgan